

**Signed November 13, 2017.**

_____
**Ronald B. King
Chief United States Bankruptcy Judge**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ANTHONY CRUZ MARQUEZ, AND | § | |
| | § | CASE NO. 17-60594-RBK |
| VICTORIA ANN MARQUEZ, | § | |
| | § | |
| DEBTORS | § | CHAPTER 7 |

## OPINION

The question in this case is whether a chapter 7 debtor may retain a mobile home subject to a security interest without redeeming the property or reaffirming the debt. 21st Mortgage Corporation ("21st Mortgage") filed its Motion to Compel Compliance with 11 U.S.C. § 521(a)(2) and to Delay Entry of Discharge (the "Motion") (ECF No. 12). Anthony Cruz Marquez and Victoria Ann Marquez (the "Debtors") filed a response and a hearing was held. The Court finds that Debtors must select between surrender, redemption, or reaffirmation, as they are the only options available under § 521(a)(2). Therefore, the Motion will be granted and Debtors will be ordered to amend their Statement of Intention for Individuals Filing Under Chapter 7 ("SOI") within thirty days. Pursuant to § 521(a)(6), Debtors have an additional forty-five days from the date the SOI is amended to enter into a reaffirmation agreement under § 524 or redeem the property

under § 722 if they choose to do so; otherwise, Debtors must surrender the property. If Debtors elect to reaffirm or redeem the property and have failed to act in accordance with their SOI at the expiration of the forty-five day period, Debtors must surrender the property to 21st Mortgage. Discharge will be suspended until Debtors have complied.

The Court finds that it has jurisdiction to render a final order in this core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This opinion constitutes the findings of fact and conclusions of law of the Court pursuant to FED. R. BANKR. P. 7052 and 9014.

## BACKGROUND

Debtors filed a chapter 7 petition on July 31, 2017. The petition included the Debtors' SOI that is at issue before the Court. "Part 1" of the SOI instructs the Debtors to list their secured creditors and select whether they will surrender, redeem, or reaffirm the property. A fourth checkbox is also listed which Debtors selected for all of the listed secured creditors. 21st Mortgage holds a lien on a mobile home purchased by Debtors in 1999. (ECF No. 1). The fourth box states, "Retain the property and [explain]:" which is followed by the Debtors' manual entry of "Debtor will continue making payments to creditor without reaffirming." (ECF No. 1). 21st Mortgage delivered a reaffirmation agreement to Debtors' counsel but it was ignored. 21st Mortgage then timely filed this Motion, moving the Court to compel Debtors to comply with their duties under § 521(a)(2) and to delay entry of discharge until Debtors have done so.

## DISCUSSION

There are two issues before the Court. First, under § 521(a)(2), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), are debtors limited to

2

surrender, redemption, or reaffirmation as their only options, or may they select "ride-through"[1] as Debtors are attempting to do in this case? Second, if ride-through is not an option and yet a debtor still attempts it, what enforcement options are available to the court? Sections 521(a) and 362(h)(1), along with Fifth Circuit precedent, provide the answers to these questions.

### A. What Are A Debtor's Options Under § 521(a)(2)?

Section 521(a)(2), found under the heading "Debtor's duties," states that an individual debtor "shall" file "a statement of intention with respect to the retention or surrender" of applicable property. § 521(a)(2). If the debtor chooses to retain the property, the debtor must specify whether "the debtor intends to redeem such property, or that debtor intends to reaffirm debts secured by such property" within thirty days of filing or before the first meeting of creditors, whichever is earlier. *Id.*; *In re Johnson*, 89 F.3d 249, 252 (5th Cir. 1996) (holding that "filing a statement of intention indicating that none of the three statutory alternatives are applicable, and failing otherwise to inform [creditor] of their intention is not in compliance with Section 521(2).").[2] If the debtor fails to timely file an SOI under § 521(a)(2), the stay will be lifted and the property will no longer be property of the estate. § 362(h)(1). Section 362(h)(1) was added in 2005 by BAPCPA. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, H.R. 31, 109th Cong., § 305 (2005).

Once the debtor has made his selection to redeem or reaffirm, the debtor has forty-five days from the date of the meeting of creditors to fulfill the stated intention; otherwise the debtor "shall . . . not retain possession of personal property . . . ." § 521(a)(6)(A)–(B). The paragraph following § 521(a)(6)(B) (sometimes referred to as the "hanging paragraph"), states that if a debtor

---

[1] Ride-through occurs when a court allows the debtor to retain property without reaffirming or redeeming it so long as they remain current on payments.
[2] Prior to the enactment of BAPCPA, § 521(a)(2) was labeled as § 521(2) but the language is virtually the same.

3

fails to comply with § 521(a)(6) within the allotted forty-five days, the stay will be lifted, the property will be removed from the estate, and the creditor will be permitted to pursue any available nonbankruptcy law remedies. § 521(a)(6)(*).[3] Section 521(a)(6) was also added in 2005 by BAPCPA. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, H.R. 31, 109th Cong., §§ 304 and 305 (2005).

Prior to the enactment of BAPCPA, a circuit split had developed regarding the availability of ride-through to chapter 7 debtors. Some circuits have interpreted § 521(a)(2) to allow a debtor a fourth option other than surrender, redemption, or reaffirmation, known as ride-through. *See In re Price*, 370 F.3d 362 (3d Cir. 2004); *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir. 1998); *Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir. 1997); *Homeowners Funding Corp. v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir. 1992); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543 (10th Cir. 1989). Other circuits, including the Fifth Circuit, concluded the opposite, holding that § 521(a)(2) requires a debtor to select only between the three options listed in the statute: surrender, redeem, or reaffirm. *See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843 (1st Cir. 1998); *Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249 (5th Cir. 1996); *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir. 1993); *In re Edwards*, 901 F.2d 1383 (7th Cir. 1990).

Of primary relevance in this case are the holdings of the Fifth Circuit in *Johnson* and the Eleventh Circuit in *Taylor*. In *Johnson*, the Fifth Circuit held that "[t]he clear language of Section 521(2)" requires a debtor to select between the three listed options of surrender, redemption, or reaffirmation, and that no other option existed. *Johnson*, 89 F.3d at 252. An attempt to select any

---

[3] Because the "hanging paragraph" found in § 521(a)(6) does not have a number or letter designation, the Court will cite to it using an asterisk ("*") symbol.

4

other option "is not in compliance with Section 521(2)." *Id.* The court "adopt[ed] the reasoning of the Eleventh Circuit in *Taylor*." *Id.* The Eleventh Circuit also held that the plain language of § 521(2) gives a debtor only three options. *Taylor*, 3 F.3d at 1516. The court found that "[m]ost of [the circuits holding that there is a fourth option] focused upon the phrase 'if applicable' and reasoned that if a debtor wishes to retain secured property but does not want to redeem or reaffirm, then those options are not 'applicable.'" *Id.* In contrast, the Eleventh Circuit found that the phrase "if applicable" applies to a debtor's decision to retain property, making the options of redemption or reaffirmation "applicable" once the debtor chooses to retain the property. *Id.* The Code requires the debtor to then "perform his intention with respect to such property" within forty-five days. *Id.* Furthermore, the Eleventh Circuit reasoned that a debtor is capable of redeeming property or executing a reaffirmation agreement in that time but "an option to retain and keep current is not an act capable of performance within forty-five days." *Id.* The court, therefore, held that a debtor wishing to retain possession of property must redeem or reaffirm; there is no other option. *Id.*

The *Taylor* court went on to highlight several policy reasons for this decision. First, "allowing retention of the property without reaffirmation or redemption would be tantamount to forcing the creditor into a de facto reaffirmation agreement with no recourse against the debtor." *Id.* As all debtors are aware, entering into a reaffirmation agreement is a voluntary act; the voluntary nature of a reaffirmation agreement extends both to debtors and creditors alike. Second, "debtors would have no incentive to keep the property in good condition or to continue making payments if the value of the collateral declined below the amount of the debt or was destroyed." *Id.* Ultimately, "allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured

5

obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral." *Id.*

Although the Fifth Circuit has not revisited the issue since Congress enacted BAPCPA, numerous bankruptcy courts within the Fifth Circuit have continued to adhere to *Johnson*. *See In re Francis*, 2015 WL 139520 (Bankr. N.D. Tex. 2015) (Nelms, J.); *In re Law*, 497 B.R. 843 (Bankr. N.D. Tex. 2013) (Jernigan, J.); *In re Sanders*, 2012 WL 692549 (Bankr. W.D. Tex. 2012) (Clark, J.). In fact, Judge Nelms found that "[t]he ruling in *Johnson* . . . was codified . . . when Congress passed [BAPCPA]." *Francis*, 2015 WL 139520 at *3. Judge Nelms noted that § 521(a)(2) "is substantially the same as section 521(2) when [*Johnson*] was decided" and "nothing in revised section 521(a)(2) suggests a congressional intent to depart from [it]." *Id.* at *5.

Some courts have found that there is still a backdoor to ride-through that applies in very limited circumstances. In those cases, the debtors had at least attempted to comply with their statutory duties under §§ 521(a)(2) and (6). For example, in *In re Baker*, the debtors and lender entered into a reaffirmation agreement but the court refused to approve it as the court believed it constituted an undue hardship. *In re Baker*, 390 B.R. 524, 529–30 (Bankr. D. Del. 2008). *Baker* and other similar cases have held that substantial compliance with § 521 is sufficient to prevent the lifting of the stay, and in effect, permits a backdoor ride-through. *See, e.g., id.* Another court went farther and held that, not only is substantial compliance sufficient, it is "essential to the possibility of carving out a continued existence of the 'ride-through' option as a so-called 'backdoor ride-through.'" *In re Jones*, 397 B.R. 775, 788 (S.D. W. Va. 2008).

Ride-through is still not an option under § 521 post-BAPCPA and even if a "backdoor ride-through" was an option available, as some courts have held, Debtors have not "substantially

6

complied" with § 521(a)(2), making that option unavailable in this case.[4] The Court finds that Debtors are required to select between the three options enumerated in § 521(a)(2): surrender, redeem, or reaffirm.

### B. What Enforcement Options Are Available To The Court If A Debtor Does Not Elect To Surrender, Reaffirm, Or Redeem Property?

Debtors assert that the only option available to the Court is to lift the stay under § 362(h)(1). Some bankruptcy courts have ordered debtors to choose between one of the three available options, or the stay would be lifted. *In re Steinberg*, 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011); *In re Harris*, 421 B.R. 597, 600 (Bankr. S.D. Ga. 2010). One bankruptcy court ordered the debtor to select between the three available options and suspended discharge until the court could verify that the debtor had complied with the court's order. *In re Linderman*, 435 B.R. 715, 718 (Bankr. M.D. Fla. 2009). Finally, another court held that the stay should be lifted "for 'garden variety' violations of § 521(a)(2)" but some unusual situations may call for a stronger response. *In re Trussel*, 2015 WL 1058253 at *4 (Bankr. N.D. Fla. 2015).

In *Trussel*, the debtor filed an SOI indicating an intent to reaffirm the debt, but the debtor and creditor were unable to reach an agreement. *Id.* at *1. The creditor moved to compel the debtor to surrender the property because he had failed to comply with his stated intention. *Id.* Like the cases previously discussed, the court found that the debtor had substantially complied with his obligations under the Code and denied the creditor's motion, allowing a backdoor ride-through. *Id.* at *2–4. Of note, however, the court recognized that "unique factual settings" may give rise to a situation where it is appropriate for a court to compel surrender of property. *Id.* at *4.

---

[4] The Court does not express an opinion as to the availability of a "backdoor ride-through" for future debtors who have "substantially complied" with their duties under § 521(a)(2) and (6).

Specifically, surrender may be compelled when a debtor does not "attempt, in good faith, to reach a reaffirmation agreement with the creditor." *Id.*

This Court agrees with *Linderman* and *Trussel*: a violation of § 521(a)(2) should generally result in the stay being lifted, but in unusual circumstances, such as this one, where the debtor has not even attempted to comply with his duties under the Code, the Court may be compelled to take further action in order to ensure that the Code and Fifth Circuit case law are effectuated.

### C. Application To The Case At Bar

The case at bar presents a "unique factual setting" that compels the Court to take further action to ensure compliance with the letter (and spirit) of the law. Debtors intentionally did not select one of the three options available to them. At the hearing, Debtors' attorney acknowledged that Debtors are required to make a selection between the three options, but argued that their failure to do so can only result in the stay being lifted. (Trial Audio, 1:43:25, Oct. 17, 2017). Debtors state that once the stay is lifted, 21st Mortgage can then pursue any available state law remedies, such as foreclosure. In this unique situation, however, foreclosure will not be immediately available (if ever) to 21st Mortgage because Debtors are current on their mobile home payments and the contract (entered into in 1999) does not contain an *ipso facto* clause that is commonly found in contracts today. *Id.* In effect, Debtors believe they have found a loophole that will allow them to ride-through this bankruptcy without reaffirming or redeeming the property.

It appears to the Court that Debtors' purpose in attempting to avoid their duties under the Code is the very reason the Eleventh Circuit determined that ride-through was not permitted. Allowing Debtors to ride-through without 21st Mortgage's consent would amount to forcing 21st Mortgage into an involuntary reaffirmation agreement while also discharging Debtors' personal liability on the debt. In the case of a mobile home riding through bankruptcy, the concern that

8

Debtors will cease making payments if the value of the collateral drops below the amount of the debt is very real; mobile homes are notorious for steep declines in value. Ultimately, the benefits that would be bestowed upon Debtors if ride-through were permitted in this case would amount to a head start, and the Code only promises a fresh start.

Although not dispositive, the Court is also not persuaded by Debtors' argument that this all could have been avoided if 21st Mortgage had included an *ipso facto* clause in the contract. (*See* Trial Audio, 1:43:50, Oct. 17, 2017). First, this argument ignores the fact that Debtors are *required* to select one of only three options under § 521(a)(2) and Debtors intentionally chose not to do so. Second, only since the passage of BAPCPA have *ipso facto* clauses become an effective tool for creditors. Section 521(d), giving creditors the ability to enforce *ipso facto* clauses once property has been removed from the estate and the stay has been lifted, was added to the Code by BAPCPA in 2005. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, H.R. 31, 109th Cong., § 305 (2005). Prior to BAPCPA, courts routinely held that *ipso facto* clauses were unenforceable. ***See, e.g., In re NextWave Pers. Commc'n Inc.***, 244 B.R. 253, 269 (Bankr. S.D.N.Y. 2002) (citing a number of cases, all holding that *ipso facto* clauses are unenforceable). The Court does not believe Debtors can circumvent the Bankruptcy Code and Fifth Circuit precedent simply because 21st Mortgage did not include a clause in the contract that would have been considered unenforceable at the time the contract was executed.[5]

In Debtors' response brief, Debtors raise a few additional arguments that the Court will address. First, Debtors boldly claim that they are "not arguing before this Court that there is a '4th option' under the Bankruptcy Code" in an attempt to distinguish this case from *Johnson*, while

---

[5] Of note, it appears that 21st Mortgage updated its security agreement to include an *ipso facto* clause after the enactment of BAPCPA. *See In re Bowling*, No. 15-52634, ECF No. 13 (Exhibit A) (Bankr. W.D. Tex. 2015).

their SOI literally attempts to select a fourth option. Regardless of how Debtors would like to frame the argument, ultimately they are asking the Court to allow them to ride-through this bankruptcy without reaffirming or redeeming the property at issue while still maintaining possession of it. Therefore, *Johnson* applies. As previously discussed, failing to select one of the three options provided by the Code is a failure to comply with the Code.

Second, Debtors' brief asserts that under the terms of the reaffirmation agreement sent to Debtors, "21st Mortgage unilaterally decided that the interest rate on this debt would be increased from 8.75% to 9.73% if the Reaffirmation Agreement was signed" and that "21st Mortgage also wanted the Debtors to agree . . . that the value of their mobile home was exactly, to the penny, equal to the debt owed by the Debtors on the manufactured home - $44,610.41." The Court is not persuaded by this argument for a number of reasons. First, Debtors had already selected the impermissible fourth option on their SOI before ever seeing the proposed reaffirmation agreement from 21st Mortgage. Second, page one of the proposed reaffirmation agreement states that the annual percentage rate before and after the reaffirmation is 9.73% and page two of the original note and security agreement confirms this. Debtors' attorney appears to have confused the contract interest rate of 8.75% listed on page one of the note with the Truth in Lending disclosure of the annual percentage rate on page two. Finally, 21st Mortgage stated (and Debtors never challenged 21st Mortgage's claim) that it provided Debtors with the reaffirmation agreement and Debtors never responded. While citing to *Trussel* (cited by the Court *supra* for the proposition that the Court can compel surrender when a debtor does not "attempt, in good faith, to reach a reaffirmation agreement"), Debtors claim that the parties "were not able to reach an agreement on the terms of a Reaffirmation Agreement" so the Court should allow the property to ride-through the bankruptcy. But it appears to the Court that Debtors made absolutely no effort to reach an

agreement. If Debtors wanted to retain the property but were unsatisfied with 21st Mortgage's initial proposed reaffirmation agreement, the proper course of action would have been to send a counteroffer. Debtors cannot now claim, after refusing to make any effort to reach an agreement with 21st Mortgage, that they "were not able to reach an agreement."

Third, Debtors' counsel explains in the brief that, after reviewing the proposed reaffirmation agreement with her clients, it was decided that reaffirming the debt was not in Debtors' "best interest as it would constitute an undue hardship on them." Aside from the fact that the Debtors had, long before receiving the proposed reaffirmation agreement, already selected the fourth option on the SOI in an attempt to ride-through this bankruptcy without reaffirming, the Court understands that not all debts should be reaffirmed as some are not in a debtor's best interest. But, under the Code, a debtor "*shall . . . not retain possession of personal property . . .*" unless he redeems the property or reaffirms the debt. § 521(a)(6)(A)–(B) (emphasis added). Because Debtors chose not to reaffirm the debt, under the Code, Debtors' only remaining option that would allow them to retain possession of the property was to redeem it.

Debtors' brief spends a substantial amount of time arguing that Debtors cannot be forced to enter into a reaffirmation agreement. The Court agrees that a reaffirmation must be voluntary, but in order to carry out the provisions of the Code and Fifth Circuit precedent, the Court can compel Debtors to select between the three available options on their SOI. "[C]ontinue making payments to creditor without reaffirming" is not one of them.

Finally, Debtors rely on *In re Williamson*, a New Mexico bankruptcy case, as support for their argument that the Court's hands are tied in this case. In an almost identical case that even included the same creditor, that court held that because § 362(h)(1) automatically lifts the stay if § 521(a) is not complied with, the court cannot impose further repercussions on debtors who refuse

11

to comply with their duties under the Code. *In re Williamson*, 540 B.R. 460, 468 (Bankr. D.N.M. 2015). The court came to the conclusion that lifting the stay is the exclusive remedy because the clause following § 521(a)(2)(B) states that "nothing in subparagraphs (A) or (B) of this paragraph shall alter the debtor's or trustee's rights with regard to such property under this title, except as provided in section 362(h)." *Id.*; § 521(a)(2)(B). This Court comes to a different conclusion. First, this Court's order does not alter any of Debtors' rights under the Code; Debtors have the right to surrender, redeem, or reaffirm and the Court is simply directing them to choose between those options. Second, even if this opinion and companion order did alter Debtors' rights in property, § 521(a)(2)(B), relied on in *Williamson*, only states that "nothing in subparagraphs (A) or (B) *of this paragraph*" will alter a debtor's rights in property. § 521(a)(2)(B) (emphasis added). The Court's power to issue this opinion and companion order is not derived from § 521(a)(2)(A) or (B). Ultimately, this case boils down to a very simple question: Can Debtors knowingly shirk their duties under the Code with no repercussions from the Court and this Court's answer is "no."

## CONCLUSION

After careful consideration, the Court finds that due to the unique facts of this case, it is appropriate to compel Debtors to amend their SOI to comply with § 521(a)(2) as interpreted by the Fifth Circuit in *Johnson*. Debtors shall amend their SOI to comply with § 521(a)(2) within thirty (30) days of the entry of this Order. Once Debtors have amended their SOI, Debtors will have forty-five (45) days to perform their stated intention pursuant to § 521(a)(6).

Debtors' discharge will be suspended until the Debtors have amended their SOI and performed their stated intention. A separate order will be entered.

# # #